Howell E. Jackson,
special judge, delivered tbe opinion of tbe court.
By an act of the legislature of this state, passed on the 24th of May, 1866 [Acts 1865--6, cb. 121, sec. 59, p. 329], certain individuals and others who might thereafter become stockholders, were incorporated under the name and style of the “Nonconnah Pike Company.” Shortly after its passage the charter was accepted and the company duly organized. Subsequently, on the 9th of March, 1867, an act was passed [Acts 1866--7, cb. 66, sec. 23, p. 191], changing the name of the corporation to the “Nonconnah Turnpike Company.”
The provisions of the charter and amendments thereof, which it is important or material to notice, are the following, viz: The company was empowered to build the bridges and repair the levee across Nonconnah Bottom, on the Pigeon Roost road in Shelby county. The levee (which had prior to the war been owned by another company) was required to be graded and thrown up above high ■water, and be sufficiently wide to admit wagons to pass each other, with good and sufficient bridges across the main streams and sloughs. The- charter, after fixing the rates of toll which the company might charge, further provided *514 that the bridge across the main stream should, be completed within twelve months after the passage of the act, 'and the entire levee and all the bridges within eighteen months froan the date of the same, with the right to commence collecting tolls as soon as the bridge across the main stream was completed. It was further provided, that if the road, or any part of it, should become and remain out of repair for twenty-live days at any one time, any person might make affidavit before any justice of the peace of the county of that fact, and thereupon a warrant should issue against the company, summoning it before such justice of the peace, who was to hear the complaint, and if true, give judgment that the toll gate should he opened and so continue until the necessary repairs were made (from which judgment either party could appeal to the circuit court), and when the road should have been properly repaired, said justice of the peace, or his successor in office, upon due proof made, that the road had been repaired, was authorized to give judgment that the company should again collect tolls. The capital stock of the company, fixed by the charter at $50,000, was subscribed for, but with the exception oí a small portion thereof, has never been paid in by the stockholders. On the 4th of March, 1867 (eh. 50,.sec. 3) [Acts 1866-7, ch. 50, sec. 3, p. 135], the company’s charter was amended and enlarged by extending its franchise over, and empowering it to: levee and build bridges across Nonconnah Bottom, on each of the following roads, viz.: On the Memphis & Holly Ford road, on the Memphis & Hernando road, and on the Memphis & Horn Lake road, with the same power, privileges and right to collect tolls as had been granted to said company on the. Memphis & Pigeon Boost road. It was further provided that the company should have two years from the date of said amendment in which to complete each of these roads. The “Nonconnah Turnpike Company” accepted this amendment of their charter. The period for the completion of these three *515 new roads over which the company’s franchise had been extended by the above amendment, was subsequently, by an act passed February 12th, 1869 [Acts 1868--9, ch. 45, sec. 20, p. 208], enlarged. Said act of March 4th, 1867, being so amended as to read "four years from the passage of this -act.” Another act of the legislature was passed on the 17th of February, 1870 [Acts 1869-70, ch. 59, sec. 21, p. 396], reducing the rate of tolls which said company was allowed to charge under their 'original charter, but this act the company refused to accept, and it is conceded to be void.
On the 11th of May, 1874, the present bill, in the name of the state, o>n the information of certain relators, was filed in the first circuit court of Shelby county against said Noncomnah Turnpike Company, under the provisions of secs. 3409, 3413, 3414, 3415, 3416, 3425 of the Code [Shannon’s Code, secs. 5165, 5169-5172, 5181], for the purpose of having defendants’ corporate rights and franchises declared forfeited, and to have the company excluded from the further exercise of such rights and franchises.
This bill 'relates specially to the Pigeon Boost road, and sets forth, besides others which need not- be noticed, two leading causes or grounds of forfeiture, viz.:
1st. That the defendant had failed to complete their road across Nonconnah Bottom, erect bridges over all the sloughs, and construct their road according to the conditions and requirements of the charter.
2nd. That the defendant had knowingly suffered and permitted its road to be and remain in such a state of bad repair for months together during the winter and spring of 1872, 1873 and 1874, as to greatly incommode and inconvenience the traveling public using the same.
The complainants, by their bill, demanded a jury, under the provisions of sec. 3416 of the Code [Shannon’s Code, sec. 5112], to try the issues of fact raised. The defendant answered, denying the material allegations of the bill, and *516 thereupon, at the September term, 1874, of the said circuit court, a jury was empaneled to try certain issues of fact submitted to them. After hearing the. evidence and arguments of counsel, and receiving the charge of the court, the jury returned a separate verdict or response to each of the several issues presented.
The defendant, moved for a new trial, and the court being of the opinion that there was error in its instructions to the jury on the fourth, fifth 'and part second of seventh issue, announced that a new trial would he granted defendant because of snob error, unless complainants would consent to modify the finding of the jury on said issues, so as to make them conform to the views of the court. The complainants consented to this modification of the finding of the jury, and the defendant’s motion for a new trial was thereupon overruled. It is now insisted for defendant, and we think correctly, that complainants are hound by this consent, and can only rely in this court for relief upon such rights as they may have under the verdict as modified.
The second part of the seventh issue charged that the $50,000 capital stock subscribed to defendant’s corporation was colorable — not in good faith — and never intended to be paid. This the jury found for complainants, but under the above action of the court and consent of the complainants, was modified and changed so as to make this issue found for defendant. That issue is not, therefore, before ns for consideration.
The fourth issue charged ‘ ‘that the defendant had suffered and knowingly .permitted its road to be out of repair, to wit: during the winter and spring of 1873-4, when the same was not above high water, and when the same was not sufficiently wide, with good and sufficient bridges across the main stream, and the bridges in said bottom, to permit wagons to pass each other.” This was found for complainants, but tinder above consent was modified by the court so that the word “knowingly” should not be taken or con *517 sidered “in the sense of willfully permitted to remain out of repair.”
The fifth issue charged that parts of defendant’s road were willfully permitted and suffered to be in such bad repair for a long time, to wit: three months in 1873-4, that the traveling public could not conveniently pass over the same,” etc. This was found for complainants, but under the above order of the court and consent of complainants, was modified so* as to make the finding for defendant.
We do not deem it necessary to notice in detail the other issues of fact submitted to and found by the jury. For, after modifying the finding of the jury upon the three issues referred to above, as the complainants consented to do, it still clearly and satisfactorily appears from the verdict as modified and the evidence in the cause (and the court so declared by its decree), that Nonconuah Bottom, on the Pigeon Boost road, across which defendant was required by its charter to construct its turnpike, extended on the north to the foot of Brown’s Hill; that from defendant’s toll gate, on the south side of Noncomnah Creek and the southern boundary of said bottom, to the foot of Brown’s Hill, on the north side of the creek, was about one mile, the width of said bottom; that the defendant, up to the commencement of this suit and the date of the decree, November 9th 1874, had only constructed its road and built bridges on about three-fourths of that distance, its northern terminus ending at Thos. Carragin’s, where there was a small “bulge” or mound in the bottom; that it was one quarter of a mile from said Oarragin’s, or the northern terminus of defendant’s road, to the foot of Brawn’s Hill; that the ground was low, swampy, miry, with two or three sloughs crossing the road between said points; that over these sloughs there were no culverts or bridges, and that this portion of the bottom was, during the winter and spring and rainy seasons, literally impassable, compelling the traveling public at such times to aban *518 don the road and seek their way through the woods by other routes; that during overflows of Noconnah Creek, and rainy seasons, the water not only stood in said sloughs, but extended over the road at one or more points between Carragin’s and Brown’s Iiill, and, further, that portions of the levee between the toll gate and said Oarragin’s, which the defendant claimed to have constructed according to the requiremnts of its charter, were for months during the winter and spring of 1873-4:, suffered and permitted to remain out of repair, so that wagons could not pass each other at all parts of the same. Upon this state of facts complainants moved the court for .judgment of forfeiture against the defendant, which was refused, the court being of opinion that there was no sufficient ground, for a forfeiture of the charter. The court, however, • proceeded to adjudge that because the defendant’s bridges were “not in as good repair as they should be, the levee in the. winter time allowed to remain in such condition as to warrant complaint; and, further, because in the opinion of the court, the defendant’s turnpike should be completed to the foot of Brown’s Iiill, a quarter of a mile north of where it is now completed, and because defendant has, for years, been taking toll, which it was only allowed to do upon condition that it completed its road to Brown’s TIdll within eighteen months from the grant of its charter, it was therefore or- ' dered and decreed by the court that the defendant’s gates bo thrown open to the public until the bridges be made sufficient for all the emergencies of trade on the road, ordinary as well as extraordinary, and that the levee, if not in perfect repair, be made so above high water, wide enough to allow wagons to pass each other thereon, from the toll gate through Nonconnah Bottom to the foot of Brown’s Hill, bridging such part as is not now bridged, so as to make it a first-class turnpike road.”
The bill was retained until the above work should be done, and the defendant was directed to report to the court *519 as soon as it liad finished said work, and its gate was to remain open and the defendant enjoined from taking toll until the further order of the court. This decree was rendered on the 9th of November, 1874. On the 4th of Decern, ber, 1874, the defendant having reported that it had finished aLl the work required by said decree, the court appointed two commissioners to inspect the same and report to the court whether defendant had completed the work in conformity with the requirements of said decree. These commissoners made their report on the 11th of December, 1874, showing compliance by defendant. The court ordered that the company be allowed to close its gates and proceed to collect tolls in accordance with its charter. The plaintiffs tendered their bill of exceptions to the action of the court, overruling their motion for judgment of forfeiture, and appealed in error to, this court. And the question presented by the record for our determination is, did the circuit court err in refusing to pronounce judgment of forfeiture against defendant, and in granting the company further time within which to complete its road and repair its bridges and road-bed, etc.?
"We are clearly of opinion that the circuit court had no authority to grant the defendant time to comply with the requirements of its charter in the construction of its road, and extending it to Brown’s Hill, as was done by the decree of November 9, 1874. If such failure to construct or keep its road in repair had subjected the defendant to' a forfeiture of its charter, the court had no power to relieve it or condone the forfeiture. Courts possess no such dispensing power. See People v. Kingston & Middleton Turnpike Co., 23 Wendell, p. 211, where Chief-Justice Nelson says on the subject: “If the failure is such as cannot be disregarded in a court of law upon settled principles, and bas arisen from mistake or accident, the legislature will apply the. remedy. They and not the court possess dispensing powers.” Also, to the same effect, 27 Barbour, N. T. Rep., *520 pp. 453-4. So in the case of People v. Hillsdale & Chatham Turnpike Co., 23 Wendell, p. 258, Mr. Justice Cowan says, “where a cause of forfeiture has once arisen, whether from nonfeasance or otherwise, no case nor dictum can be found that it shall be legally atoned for by good behavior.” It was suggested by counsel for defendant that the action of the circuit judge might he referred to and justified under that provision of the charter mentioned above, which authorized a justice of the peace, upon complaint made by affidavit of tbe non-repair of the road, and found to be true, to open tbe company’s gate till repairs were made. We cannot concur in this view. This remedy is confined to proceedings before justices of the peace. It applies only to non-repairs. It is, moreover, a merely accumulative remedy, in no way interfering with or taking the place of others. See High on Extraordinary Remedies, sec. 651; 23 Wendell, pp. 223, 243, 245, 254, 537; Red-field’s Law of Railways, p. 705, sec. 12. It follows that the acts done and work performed by defendant under said decree of November 9th, 1874, i*n no way interfere with complainants right to have the relief sought by. their bill, if tbe facts and verdict warrant a judgment of forfeiture.. It is insisted for defendants that such forfeiture cannot be declared, because tbe failure tO' complete the road and build the bridges over the sloughs on that portion of tbe bottom between Oarragin’s and the foot of Brown’s Hill, is not shown to have been willful, and not the result of mistake, because the time for its completion was extended by the acts of March 4, 1868, and February, 12, 1869, under which it is claimed that defendant had four years from the date of the latter act within which to complete said road, and because said acts and the act of 17th of February, 1870, attempting to reduce its tolls are legislative recognitions of tbe existence of the corporation, and amount to legislative waiver of any previous ground of forfeiture.
In support of the first ground of defense, we are referred *521 to the cases of The State v. Merchant’s Insurance and Trust Company, 8 Hum., 235, and The State v. Columbia & Hampshire Turnpike Company, 2 Sneed, 254, and the State v. Scott, 2 Swan, 332. We. have carefully examined these and other authorities cited by defendant, and are of the opinion that they do not support defendant’s position. In the 8 Hum. ease, which is a proceeding to restrain the corporation from exercising franchises not granted under' the eighth section of the act of 1846, which section did not authorize a decree of forfeiture, and the attorney-general waived the right to demand a forfeiture. The expression used by the distinguished judge who delivered that opinion (p. 255), to the effect that, if the proceeding had been under the fifth section of said .act, a forfeiture should not have been declared, because the defendant exercised the franchises under an honest mistake in the construction of its charter, is merely a dictum, and one not applicable here. The 2 Swan case was under the act of 1835, oh. 54, sec. 4, and is not in point. As to the 2 Sneed case, the report does not state under what statute it was had, and so far as- that case goes to establish the proposition that noncompliance Avith the charter conditions and requirements of such corporation in the original construction and completion of roads, must he charged and shown to have been willful. We think it needs qualification. It may correctly state the rule as to acts of neglect or omission to keep the road in proper repair after it has been completed according to charter requirements. But even this is questionable under the provisions of the Code already referred to, which greatly extend and enlarge the acts of 1835 and 1846, sec. 3425 [Shannon’s Code, sec. 5181], declaring that if it he adjudged that a defendant corporation has, by neglect, nonuser, abuse, or surrender, forfeited its corporate rights, judgment will be rendered that it he altogether excluded, etc. The true rule upon this subject is, that all the duties or requirements enjoined by an act of incorporation, are *522 conditions attached to the grant- of the franchise conferred, and whether they are conditions precedent or subsequent to the corporate existence, must be substantially performed, or the corporation will subject itself to forfeiture. Chief-Justice Nelson, in the case of People v. Kingston & Middleton Turnpike, Company, 23 Wendell, 193, announces the rule as above stated, and says “that a non-compliance with the requirements of an act of incorporation of a turnpike company as to the construction of the road is 'per se’ a. misuser, forfeiting the privileges and franchises conferred.” That “to work a forfeiture, it is not necessary that the neglect or refusal to perform the duties enjoined should proceed from a bad or corrupt motive. It is enough that the duties are neglected or designedly omitted.” See to same effect, 23 Wendell, 204-211; 27 Barbour, N. Y. R., pp. 445 to 453; 9 Michigan Rep., 285; 41 New York, pp. 328 to 330; Angell & Ames, sec. 776.
Under these authorities we are of the opinion that the defendant’s failure to construct the. road and build the necessary bridges oirer that portion of Nonconnah Bottom lying between Carragin’s and foot of Brown’s Hill, being one-fourth of the distance across said bottom, is such a substantial non-compliance with the requirement and conditions of its charter as to subject the defendant to a forfeiture thereof.
We are furthermore of the opinion, that the time given defendant by the acts of the 4th of March, 1867, and 12th of February, 1869, related alone to the, Memphis & ITollow lord, the Memphis & Hernando, and the Memphis & Horn Lake roads, over which defendant’s franchise was extended by said act of March 4th, 1867: The reference made in said act to the Pigeon Boost was simply to- show what the defendant’s rights, privileges and inimuniths were over these three new roads thus brought within its charter. Even i.f these acts be held to have extended the time for the completion of said Pigeon Boost- road for four years *523 from the date of the last 12th of February, 1869, that time also elapsed before the filing of the present bill on the 11th of May, 1874, when the road was still uncompleted, as above stated. Nor can w-e perceive how said acts of 1867, 1869 and 1870 amount to such a legislative recognition of the corporation as will waive any forfeiture it may have incurred. Legislative recognitions may 'Operate to waive defects in the due organization of corporations, and there may be express or implied legislative waiver of forfeiture. 23 Wendell, 193, 212; 35 Wiscosin, 602j 27 Barbour, 454. But the above acts present no such waiver. Even if they did, they would not cover or cure the cause of forfeiture oecuring afterwards, such as continuing failure to- complete the road would be, as decided in Thompson v. The People, 23 Wendell, 538. A condition like the present, as to the completion of the road, is a continuing condition.
Again, as -already stated, the defendant’s fanchise by the act of March 4, 1867, was extended over the Memphis & Hernando, the Memphis & Hollow Ford, and the Memphis & Horn Lake road, across Nonconnah Bottom, with the same privileges and duties granted and imposed by the act of incorporation as to the Nonconnah Bottom on the Pigeon Roost road. They accepted this amendment', and by act o>f February 12, 1869, were allowed four years from that date within which to construct the levees and build the bridges across said bottom, on each of said roads-.
It appears from the record in the -suit of -State of Tennessee, at the relation of Tally et al. v. Smith et al., heard ■with the present case, that the defendant has only constructed its levee and built bridges -across Nonconnah Bottom, o-n the Memphis & Hernando road; that it has declined to build the levees and bridges -across said bottom on the Hollow Ford and Horn Lake roads, which it claims the right to abandon or drop from its franchise. Has it the right to do so? It is manifest that the object of the legislature was to give the public the- benefit of a good turn *524 pilce on eacli of these roads, when it extended defendant’s corporate rights on the same, and that this purpose will be defeated if defendant can, at its own option, abandon two of them, and thereby force the travel across the two it has elected to keep up. The act of March 4, 1867, does not create a seperate corporation with distinct franchises for each of said roads, but simply brings these three new roads into the existing corporation, with one and the same franchise over them all. The acceptance of this charter may not amount to such a contract or legal obligation between the state and the company as will give the state or the public the right to compel the defendant to construct all of said roads. But the defendant, under a franchise to construct and maintain four certain roads, cannot abandon one or more of them without subjecting itself to a forfeiture of its charter. This principle is clearly stated and well illustrated by the case of The People v. The Albany & Vermont R., 24 New York, 261, 268. And under its authority, we are of the opinion that the defendant has forfeited its charter for failing to complete the levee and construct the bridges across Nonconnah Bottom, on the Hollow Ford and Horn Lake roads, as well as for failing to complete the levee and the bridges on the Pigeon Roost road, on that portion of the bottom lying between Carragin’s and the foot of Brown’s Hill.
This conclusion renders it unnecessary to discuss the second branch of the case, as to the non-repair of that portion of the road which defendant did construct.
It follows that the judgment of the circuit court must be reversed and judgment of forfeiture be declaaed, annulling and vacating defendant’s charter, with costs.